# JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF YORK

| | |
|---|---|
| RAYMOND NEUFELD, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENER1, INC., CHARLES GASSENHEIMER, JEFFREY SEIDEL, ROBERT R. KAMISCHKE, and KENNETH BAKER,<br><br>Defendants. | Case No.<br><br>**11 CIV 5795**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Raymond Neufeld ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ener1, Inc. ("Ener1" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ener1; and (c) review of other publicly available information concerning Ener1.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of purchasers of Ener1's securities between January 10, 2011 and August 15, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Ener1 designs, develops and manufactures high-performance, prismatic, rechargeable, lithium-ion batteries and battery pack systems for energy storage. Ener1 also conducts research and development activities on fuel cells and nano-coating processes. In 2009

and 2010, Ener1 made separate investments in Think Holdings, AS ("Think Holdings"), a Norwegian limited liability company and the majority owner of Think Global, AS ("Think Global"), an electric vehicle ("EV") manufacturer. As of March 31, 2011, Ener1 controlled approximately 48% of the outstanding voting power in Think Holdings and two individuals on the Board of Directors of Ener1 also served on the Board of Directors of Think Holdings.

3.      On May 10, 2011, the Company announced its financial results for the 2011 fiscal first quarter and reported a net loss of $84.7 million, or diluted net loss per share of $0.51 for the quarter, mostly as a result of a one-time $59.4 million impairment recorded during the quarter to write down the Company's investment in Think Holdings and a $13.9 million loss on financial instruments, which was primarily attributable to the impaired value of the investment. The impairment charge and loss on financial instruments totaled $73.3 million, or $0.44 per diluted share, for the three months ending March 31, 2011.

4.      On this news, shares of Ener1 declined $0.67 per share, or 27.35%, to close on May 11, 2011, at $1.78 per share, on usually heavy volume.

5.      On June 22, 2011, the Company disclosed that the Audit Committee of the Board of Directors of Ener1, the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO") of Ener1 concluded that a material charge was required under generally accepted accounting principles ("GAAP") applicable to Ener1 related to the loans receivable of Think Holdings and accounts receivable of Think Global held by Ener1. Further, the Company indicated that this conclusion was based on the announcement by Think Global that, following an extended and ultimately unsuccessful search for long-term financing, it would be filing for bankruptcy proceedings in the Norwegian courts on June 22, 2011. Ener1 estimated that the amount of the charge would be $35.4 million, subject to change to the extent that the Company

received any recovery as a result of the liquidation of Think Global. The Company, however, commented that any such recovery, to the extent it occurred at all, would likely be in significant.

6.      On this news, shares of Ener1 declined $0.07 per share, more than 5%, on unusually heavy volume, and further declined $0.16 per share, or 12.4%, to close on June 23, 2011, at $1.13 per share, also on unusually heavy volume.

7.      On August 9, 2011, after the market closed, the Company disclosed accounting errors "related to the loans receivable of Think Holdings, AS (Think Holdings) and accounts receivable of Think Global, AS (Think Global) held by Ener1." As such, the Company disclosed a delay in filing its quarterly report on Form 10-Q for the quarter ended June 30, 2011.

8.      On these revelations, the Company's shares fell $0.08 or 9.6%, to close at $0.75 on August 10, 2011.

9.      On August 16, 2011, Ener1 disclosed that on August 10, 2011, the Audit Committee of the Board of Directors of Ener1, based upon a recommendation from management, determined that the Company's financial statements for the year ended December 31, 2010 and for the quarterly period ended March 31, 2011, respectively, should no longer be relied upon and should be restated. Further, the Company disclosed that the determination was made following an assessment of certain accounting matters related to the loans receivable owed to Ener1 by Think Holdings and accounts receivable owed to Ener1 by Think Global held by the Company, and the timing of the recognition of the impairment charge related to the Company's investment in Think Holdings originally recorded during the quarter ended March 31, 2011.

10.     On this news, shares of Ener1 declined $0.33 per share, or 42.31%, to close on August 16, 2011, at $0.45 per share, on unusually heavy volume.

3

11.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Think Global lacked adequate capital to continue operating; (2) Think Holdings did not have the ability to raise capital to continue operations; (3) the Company failed to timely impair the value of its Think Holdings investments; (4) the outstanding loan receivable and accounts receivable due from Think Holdings and Think Global were uncollectible; (5) the Company's financial statements were misstated; (6) the Company's financial results were not prepared in accordance with GAAP; (7) the Company lacked adequate internal and financial controls; and (8) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts

charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District.

16.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

17.     Plaintiff Raymond Neufeld, as set forth in the accompanying certification, incorporated by reference herein, purchased Ener1 common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Ener1 is a Florida corporation with its principal executive offices located at 1540 Broadway, Suite 40, New York, New York 10036.

19.     Defendant Charles Gassenheimer ("Gassenheimer"), was, at all relevant times, CEO and Chairman of the Board of Ener1, and was, at all relevant times, a Director of Think Holdings.

20.     Defendant Jeffrey Seidel ("Seidel"), was, at all relevant times, CFO of Ener1.

21.     Defendant Robert R. Kamischke ("Kamischke"), was, at all relevant times, Chief Accounting Officer and Vice President of Finance of Ener1.

22.     Defendant Kenneth Baker ("Baker"), was, at all relevant times, a Director of Ener1 and was, at all relevant times, a Director of Think Holdings until April 26, 2011.

23.     Defendants Gassenheimer, Seidel, Kamischke, and Baker, are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of

their positions with the Company, possessed the power and authority to control the contents of Ener1's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS
### Background

24.     Ener1 designs, develops and manufactures high-performance, prismatic, rechargeable, lithium-ion batteries and battery pack systems for energy storage. Ener1 also conducts research and development activities on fuel cells and nano-coating processes. In 2009 and 2010, Ener1 made separate investments in Think Holdings, a Norwegian limited liability company and the majority owner of Think Global, an EV manufacturer. As of March 31, 2011, Ener1 controlled approximately 48% of the outstanding voting power in Think Holdings and two individuals on the Board of Directors of Ener1 also served on the Board of Directors of Think Holdings.

### Materially False and Misleading
### Statements Issued During the Class Period

25.     The Class Period begins on January 10, 2011. On this day, Ener1 filed a Current Report with the SEC on Form 8-K. The Company's Current Report on Form 8-K was signed by Defendant Gassenheimer. Therein, the Company, in relevant part, stated:

Item 1.01 Entry into a Material Definitive Agreement.

On January 4, 2011, Ener1, Inc. ("Ener1") and Investinor AS ("Investinor") entered into an Expanded Put Right Agreement. Ener1 may enter into additional similar agreements (collectively, the "Put Agreements") in connection with the efforts by Think Holdings, AS, a Norwegian company ("Think"), to raise approximately $10 million in bridge financing, which is intended to be subsequently converted into Series B Convertible Preferred Stock (the "Series B Shares") or other equity in Think. Ener1 intends to make a $1.67 million loan in the same bridge financing, which is also intended to be converted into Series B Shares or other equity in Think. Think is a Norwegian based company that develops and produces electric vehicles, and is also a significant customer of Ener1. Both Ener1 and Investinor have substantial equity interests in Think.

Pursuant to Investinor's Put Agreement, Investinor agreed to provide $2.5 million in bridge financing to Think and waive certain shareholder rights in Think. (As stated above, it is the intent of the parties for this bridge loan to be converted into Think equity.) As a condition thereto, Ener1 granted Investinor the right to "put" (or exchange) the equity into which such bridge loan is intended to be converted and also the right to put a prior investment Investinor made in Think in August of 2009 ($5.0 million of Series B Shares), in each case, for restricted shares of Ener1 common stock. (Under the Think amended and restated shareholders agreement (previously filed as Exhibit 10.7 on Ener1's Quarterly Report on Form 10-Q filed with the Commission on May 10, 2010), Investinor and certain other investors received an additional right to put their investments made in Think in May of 2010 for restricted shares of Ener1 common stock. Investinor purchased $3.3 million of Series B Shares in May of 2010.) All of the foregoing put rights expire on May 5, 2011.

The price at which Ener1 common stock would be issued in connection with a put would be the 15-day volume weighted average trading price of Ener1 common stock, determined as of the date on which the applicable put notice is delivered (subject to a floor of $4.00). As of the date hereof, Investinor has not elected to exercise its put rights, however, if Investinor exercised its put rights in full today, Ener1 would be obligated to issue approximately 2.7 million shares of Ener1 common stock to Investinor, and in exchange therefore, Ener1 would receive a total of approximately 6.5 million Series B Shares and warrants exercisable for an additional 1.5 million Series B Shares.

Ener1 may enter into additional Put Agreements with investors participating in the remaining balance of Think's bridge financing. These investors, like Investinor, would intend to have their bridge loans converted into Series B Shares, and have the right to put their new Series B Shares to Ener1 for restricted shares of Ener1 common stock. The pricing terms of each put is intended to be the same as the terms given to Investinor as described above. If and to the extent an investor owns Series B Shares that were purchased in August of 2009 (which do

not have put rights), it is intended that such investor will receive the right to put 1.08 of such "non-puttable" Series-B Share for each new Series B share purchased.

Ener1 has agreed to register for resale all of the shares of Ener1 common stock that may be issued in connection with these put rights.

The foregoing description of the Put Agreements is qualified in its entirety by the full text of Investinor's Put Agreement, which is attached hereto as Exhibit 10.1, and which is hereby incorporated herein by reference.

If Think is successful in raising the remaining balance of approximately $6.0 million of its bridge financing, then, upon the anticipated conversion of such loans into Series B Shares, Ener1's corresponding put obligations would be approximately 3.1 million shares of Ener1 common stock (using the $4.00 floor price). The foregoing, coupled with all existing put obligations of Ener1, obligates Ener1 to issue up to an aggregate of approximately 8.7 million shares of common stock in exchange for a total of approximately 21 million Think Series B Shares and warrants exercisable for approximately 6.7 million Series B Shares. If all of such puts are exercised, Ener1 would own approximately 68% of the outstanding shares of Think.

It is possible that, through the eventual exercise of some or all of these put rights, Ener1 could become a majority shareholder of Think. If this occurs, Ener1 will be required to consolidate Think's results in its financial statements.

26.     On March 10, 2011, Ener1 issued a press release entitled, "Ener1 Reports Fourth Quarter and Year-End Results for 2010." Therein, the Company, in relevant part, stated:

Year-Over-Year Revenue Increases 122%
Gross Profit Margin Increases to 17.9%
Financial tables attached

NEW YORK, March 10, 2011 /PRNewswire via COMTEX/ --

Ener1, Inc. (NASDAQ: HEV), a leading manufacturer of lithium-ion energy storage systems for transportation, utility grid and industrial applications, today announced financial results for the fourth quarter and full year ending December 31, 2010. Net sales were $33.1 million in the year's final quarter, an increase of 202% over net sales of $11.0 million in the fourth quarter of 2009. For fiscal year 2010, net sales were $77.4 million, an increase of 122% over net sales of $34.8 million for 2009. Gross profit margin improved to 25.8% in the fourth quarter of 2010, up from 9.8% in the fourth quarter of 2009. For the full year, gross profit margin increased to 17.9% from 11.7% in 2009.

"We believe our financial results demonstrate that 2010 was a successful year for Ener1," said Ener1 Chairman and CEO Charles Gassenheimer. "Our strategy of creating three business units - transportation, grid and small-pack - has put us on the right track by bringing a laser focus to our solutions-based execution." Gassenheimer added: "But, Ener1 is more than just a lithium-ion battery manufacturer. Our cells and our modular packaging design are distinct advantages over our competitors, and we have used this advantage to create best-in-class product suites for each business segment. This approach has helped us secure incremental orders from existing customers, and quickly ramp-up to win opportunities from customers in new industry segments."

* * *

2010 highlights:

*     Secured $40MM supply agreement with MGTES division of Russia's Federal Grid Company, as well as a second MOU to explore the development of additional projects
*     Finalized Zhejiang Wanxiang Ener1 Power Systems Ltd. joint venture agreement in China
*     Developing secondary use applications for community and home energy storage with Duke Energy
*     Launched three separate grid energy storage demonstration projects in Japan with ITOCHU Corporation
*     Invested in third manufacturing facility based near Indianapolis
*     Completed $187.3MM in capital raises through strategic and private investments

27.     On March 10, 2011, the Company held a conference call with investors, analysts, and other market participants, to discuss Ener1's financial results for the 2010 fiscal year. During the conference call, when responding to an analyst's question about Think Holdings, Defendant Gassenheimer, in relevant part, stated:

[Analyst:] Okay. And on the funding situation at THINK, I mean, it looks like you pushed out the maturity on the – or the expiration of the line of credit to them. What are the – what's their situation in terms of their own cash levels and funding situation. I mean, I'm just getting – trying to get a sense of what should – what we should be expecting in terms of overall production for THINK this year.

[Defendant Gassenheimer:] Yeah, I mean, it's hard to – THINK is a private company, Dan. So it's hard for me to speculate. Obviously, Ener1 is a shareholder, and board member. Like other shareholders and board members THINK is pulling together their business plans for 2011. And at this point in time, it's difficult for us to give you more color than that because it's not something that

we're permitted to discuss.   What I would say is though that we are very supportive of THINK and the go-forward plan, we are helping them. And Tom, I don't know, well maybe you could make mention of some of the work we're doing to help THINK in the state of Indiana and the U.S. in terms of vehicle sales.

28.     On March 10, 2011, Ener1 filed its Annual Report with the SEC on Form 10-K for the 2010 fiscal year.  The Company's Form 10-K was signed by Defendants Gassenheimer, Seidel, Kamischke, and Baker, and reaffirmed the Company's financial results announced that same day.  The Company's Form 10-K also contained a Sarbanes-Oxley required certification, signed by Defendants Gassenheimer, Seidel, and Kamischke, who certified:

1.     I have reviewed this annual report on Form 10-K of Ener1, Inc.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a.     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b.     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d.     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a.     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

29.     Additionally, the Company's Annual Report on Form 10-K for the 2010 fiscal year filed with the SEC on March 10, 2011, in relevant part, stated:

**Accounts Receivable**
As of December 31, 2010, the accounts receivable balance with Think Global totaled approximately $13.6 million, of which $8.5 million is past due. As of February 28, 2011, the accounts receivable balance is approximately $14.3 million, all of which is past due. As of December 31, 2010 and February 28, 2011, we have not established an allowance for doubtful accounts as management believes the accounts receivable balance is collectible. Although there remains a possibility that we may receive cash in payment of these past due accounts receivables, we currently expect to accept additional equity in Think Holdings for at least a portion of these receivables.

**Loan Receivable**
In October 2010, we made short-term working capital loans to Think Holdings totaling $6.4 million, with an interest rate of 5.0% per annum, originally

scheduled to mature on December 31, 2010. In November 2010, we issued 625,000 shares of Ener1 common stock to an existing debtor of Think Holdings in exchange for that debtor's $2.5 million receivable from Think Holdings, with an interest rate of 5.0% per annum, originally scheduled to mature on December 31, 2010. We may, at our option, convert the foregoing loans, which total approximately $9.0 million, including accrued and unpaid interest, into shares of Think Holdings Series B Stock.

On February 28, 2011, we extended the maturity date of the foregoing loans made to Think Holdings that were originally scheduled to mature on December 31, 2010 to mature on May 1, 2011. In November 2010, we entered into a revolving line of credit agreement (Revolving LOC Agreement) with Think Holdings and established a line of credit for Think Holdings in the aggregate principal amount of $5.0 million, with an original maturity date of February 28, 2011. On February 28, 2011, we amended the Revolving LOC Agreement (Amended Revolving LOC Agreement) with Think Holdings and increased the principal amount from $5 million to $15 million and extended the maturity date to March 31, 2011. All funds advanced to Think Holdings under the Revolving LOC Agreement and the Amended Revolving LOC Agreement bear interest at a rate of 12% per annum and are secured by the assets and properties of Think North America, Inc., an indirect subsidiary of Think Holdings, pursuant to a security agreement. During January 2011, we advanced approximately $2.8 in working capital loans to Think Holdings and on February 28, 2011, in connection with the amendment to the Revolving LOC, we applied the working capital advances to the outstanding balance pursuant to the Amended Revolving LOC Agreement. Think Holdings has currently borrowed $7.8 million under the Amended Revolving LOC Agreement. On March 9, 2011, we extended the maturity date of the Amended Revolving LOC Agreement from March 31, 2011 to May 1, 2011.

(Emphasis in original).

30.     Additionally, the Company's Annual Report on Form 10-K for the 2010 fiscal

year filed with the SEC on March 10, 2011, in relevant part, stated:

Our primary products for the transportation market consist of battery solutions for HEVs, PHEVs, EVs and other vehicles such as trucks and buses. In 2007, pursuant to a supply agreement (the Think Supply Agreement) with Think Global, we began developing a lithium-ion battery pack designed specifically for the Think City EV. Think Global refinanced its operations in August 2009 after reorganization under Norwegian law. In September 2009, we amended the existing Think Supply Agreement which provided us with, among other rights, an exclusive right to supply battery packs for a certain period and a right of first refusal if Think Global seeks to obtain battery supplies from other battery suppliers. In May 2010, we commenced commercial production and shipment of lithium-ion battery packs for Think Global's Think City electric vehicle utilizing

our EV cell and pack. *During 2010, we shipped over 1,000 battery packs to Think Global. However, in January 2011, we temporarily stopped shipping battery packs to Think Global at their direction until the company rebalanced its overall inventory levels for the Think City in Europe and the United States.*

(Emphasis added).

31.    The statements contained in  ¶¶25-30, were materially false and/or misleading when made because defendants failed to disclose or indicate that: (1) Think Global lacked adequate capital to continue operating; (2) Think Holdings did not have the ability to raise capital to continue operations; (3) the Company failed to timely impair the value of its Think Holdings investments; (4) the outstanding loan receivable and accounts receivable due from Think Holdings and Think Global were uncollectible; (5) the Company's financial statements were misstated; (6) the Company's financial results were not prepared in accordance with GAAP; (7) the Company lacked adequate internal and financial controls; and (8) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

32.    On May 10, 2011, Ener1 issued a press release entitled, "Ener1 Reports First-Quarter Results for 2011." Therein, the Company, in relevant part,  stated:

First-Quarter Revenue of $23 Million and Gross Profit Margin of 24%

NEW YORK, May 10, 2011 /PRNewswire via COMTEX/ --

Ener1, Inc. (NASDAQ: HEV), a leading manufacturer of lithium-ion energy storage systems for transportation, utility grid and industrial applications, today announced financial results for the first fiscal quarter of 2011 ending March 31, 2011.

"We believe our first-quarter results represent another step forward in building a profitable business," said Ener1 Chairman and CEO Charles Gassenheimer. "We took definitive steps on the path toward achieving our goal of being EBITDA positive. More importantly, we have laid a strong foundation within our grid energy storage business, and we anticipate rapid revenue growth in the second half of 2011. We are also seeing positive revenue growth from our industrial

small pack business, and we have repositioned our transportation business to attack the medium- and heavy-duty markets. In addition, we expect our joint venture with Wanxiang to come on-line in the second half of 2011 adding to our growth trajectory this year."

Total consolidated revenue for the quarter was $23.1 million, an increase of 110% over the first quarter of 2010. Consolidated gross profit margin improved to 24%, compared to 10% in the year-ago quarter. Due primarily to an impairment charge, the company reported a net loss of $84.7 million, or diluted net loss per share of $0.51 for the quarter. The impairment charge represents a $69.4 million increase in net loss, which represents a one-time $59.4 million impairment recorded during the first quarter to write down the company's investment in Think Holdings and a $13.9 million loss on financial instruments, which is primarily attributable to the impaired value of the investment. The impairment charge and loss on financial instruments totaled $73.3 million, or $0.44 per diluted share, for the three months ending March 31, 2011. This compares to a net loss of $15.3 million, or diluted net loss per share of $0.13, during the same period last year.

33.     On May 10, 2011, Ener1 filed its Quarterly Report with the SEC on Form 10-Q for the 2011 fiscal first quarter.   The Company's Form 10-Q was signed by Defendants Gassenheimer, Seidel, and Kamischke, and reaffirmed the Company's financial results announced that same day.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Gassenheimer, Seidel, and Kamischke, substantially similar to the certification contained in ¶26, *supra*.  Additionally, therein, the Company's Form 10-Q, in relevant part, stated:

> **Accounts Receivable**
> As of March 31, 2011, our accounts receivable balance with Think Global totaled approximately $14.1 million, all of which is past due. As of March 31, 2011, we have not established an allowance for doubtful accounts as our management believes we will realize full value on these accounts receivable, which may include our receipt of equity or other value in connection with a potential equity restructuring of Think Holdings. We will continue to evaluate whether events or circumstances have occurred or have failed to occur which may impact the collectability of these accounts receivable. If we determine the collectability of these accounts receivable are impacted,   we will recognize a loss up to approximately $14.1 million, which could have a material adverse affect on our financial position and results of operations in future reporting periods.

*Loans Receivable*
As of March 31, 2011, the outstanding balance of our loans receivable with Think Holdings, including accrued interest, totaled approximately $18.2 million, of which $9.1 million is outstanding under a revolving line of credit and $9.1 million is outstanding pursuant to short-term working capital loans.

34.     On this news, shares of Ener1 declined $0.67 per share, or 27.35%, to close on May 11, 2011, at $1.78 per share, on usually heavy volume.

35.     The statements contained in ¶¶32-33, were materially false and/or misleading when made because defendants failed to disclose or indicate that: (1) Think Global lacked adequate capital to continue operating; (2) Think Holdings did not have the ability to raise capital to continue operations; (3) the Company failed to timely impair the value of its Think Holdings investments; (4) the outstanding loan receivable and accounts receivable due from Think Holdings and Think Global were uncollectible; (5) the Company's financial statements were misstated; (6) the Company's financial results were not prepared in accordance with GAAP; (7) the Company lacked adequate internal and financial controls; and (8) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

36.     On June 22, 2011, Ener1 filed a Current Report with the SEC on Form 8-K signed by Defendant Gassenheimer.  Therein, the Company, in relevant part, stated:

**Item 2.06 Material Impairments.**

On June 22, 2011, the Audit Committee of the Board of Directors of Ener1, Inc. ("Ener1"), the Chief Executive Officer and the Chief Financial Officer of Ener1 concluded that a material charge was required under generally accepted accounting principles applicable to Ener1 related to the loans receivable of Think Holdings, AS and accounts receivable of Think Global, AS ("Think Global") held by Ener1.  The Audit Committee, Chief Executive Officer and Chief Financial Officer made this conclusion based on the announcement by Think Global that, following an extended and ultimately unsuccessful search for long-term financing, it will file bankruptcy proceedings in the Norwegian courts on June 22, 2011. Ener1 estimates that the amount of the charge is $35.4 million.  This amount is

subject to change to the extent that we receive any recovery as a result of the liquidation of Think Global; we presently believe that any such recovery, to the extent it occurs at all, is not likely to be significant.

(Emphasis in original).

37.     On this news, shares of Ener1 declined $0.07 per share, more than 5%, on unusually heavy volume, and further declined $0.16 per share, or 12.4%, to close on June 23, 2011, at $1.13 per share, also on unusually heavy volume.

38.     The statements contained in ¶36, were materially false and/or misleading when made because defendants failed to disclose or indicate that: (1) Think Global lacked adequate capital to continue operating; (2) Think Holdings did not have the ability to raise capital to continue operations; (3) the Company failed to timely impair the value of its Think Holdings investments; (4) the outstanding loan receivable and accounts receivable due from Think Holdings and Think Global were uncollectible; (5) the Company's financial statements were misstated; (6) the Company's financial results were not prepared in accordance with GAAP; (7) the Company lacked adequate internal and financial controls; and (8) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

39.     On August 9, 2011, after the market closed, the Company disclosed accounting errors "related to the loans receivable of Think Holdings, AS (Think Holdings) and accounts receivable of Think Global, AS (Think Global) held by Ener1." As such, the Company disclosed a delay in filing its quarterly report on Form 10-Q for the quarter ended June 30, 2011.

40.     On these revelations, the Company's shares fell $0.08 or 9.6%, to close at $0.75 on August 10, 2011.

41.     On August 16, 2011, Ener1 filed a Current Report with the SEC on Form 8-K. Therein, the Company, in relevant part, stated:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

Item 4.02(a)

On August 10, 2011, the Audit Committee of the Board of Directors of Ener1, Inc. (the Company), based upon a recommendation from management, determined that the Company's financial statements for the year ended December 31, 2010 and for the quarterly period ended March 31, 2011, respectively, should no longer be relied upon and should be restated. This determination was made following an assessment of certain accounting matters related to the loans receivable owed to us by Think Holdings, AS (Think Holdings) and accounts receivable owed to us by Think Global, AS (Think Global) held by the Company and the timing of the recognition of the impairment charge related to the Company's investment in Think Holdings originally recorded during the quarter ended March 31, 2011.

The Company concluded that it was necessary to amend its Annual Report on Form 10-K for the year ended December 31, 2010 and its Quarterly Report on Form 10-Q for the quarter ended March 31, 2011 in order to restate its financial statements to (1) reflect as of December 31, 2010 the impairments of (i) our investment in Think Holdings (which had previously been recorded in the first quarter of 2011), (ii) our accounts receivable with Think Global and (iii) our loans receivable with Think Holdings, including accrued interest, (2) reflect the corrected accounting for revenue recognized in connection with transactions with Think Holdings and Think Global during the year ended December 31, 2010 and the three months ended March 31, 2011, (3) reflect the impact these adjustments have on the fair value of financial instruments and (4) to adjust the elimination of certain intercompany receivables. While the Company has not finalized the consideration of the impact of these adjustments on its assessment of internal control over financial reporting, the Company has concluded that these adjustments were the result of one or more material weaknesses in internal control over financial reporting. Ener1 is currently in the process of determining whether the Company has sufficient liquidity to fund its operations.

(Emphasis in original).

42. On August 16, 2011, Ener1 issued a press release entitled, "Ener1 Announces Intention to Restate Financial Results." Therein, the Company, in relevant part, stated:

Restatements Will Have No Impact on Company's Current or Previously Stated Cash Position or Cash Flows

NEW YORK, Aug. 16, 2011 /PRNewswire via COMTEX/ --

Ener1, Inc. (NASDAQ: HEV), announced today that the company will be restating its financial statements for the period included in an amended annual report on Form 10-K/A for the year ended December 31, 2010, as well as an amended Form 10-Q/A for the quarter ended March 31, 2011.

The company will restate its financial statements to reflect as of December 31, 2010 the impairments of its investment in Think Holdings (which had previously been recorded in the first quarter of 2011), its accounts receivable with Think Global and its loans receivable with Think Holdings, including accrued interest. The restatement will also reflect the corrected accounting for revenue recognized in connection with transactions with Think Holdings and Think Global during the year ended December 31, 2010 and the three months ended March 31, 2011, the impact these adjustments have on the fair value of financial instruments and to adjust the elimination of certain intercompany receivables.

43.     On this news, shares of Ener1 declined $0.33 per share, or 42.31%, to close on August 16, 2011, at $0.45 per share, on unusually heavy volume.

## ENER1'S VIOLATION OF GAAP

44.     These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about the impairments of its investment in Think Holdings, its accounts receivable with Think Global, and its loans receivable with Think Holdings, in violation of GAAP.

45.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which

18

would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §
210.10-01(a).

46.     The fact that Ener1 announced that it intends to restate its financial statements,
and informed investors that these financial statements should not be relied upon is an admission
that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154,
25).

47.     Given these accounting irregularities, the Company announced financial results
that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the
same accounting principles and practices used to prepare annual financial statements" (APB No.
28, 10);

(b)     The principle that "financial reporting should provide information that is
useful to present to potential investors and creditors and other users in making rational
investment, credit, and similar decisions" (FASB Statement of Concepts No. 1, 34);

(c)     The principle that "financial reporting should provide information about
the economic resources of an enterprise, the claims to those resources, and effects of
transactions, events, and circumstances that change resources and claims to those resources"
(FASB Statement of Concepts No. 1, 40);

(d)     The principle that "financial reporting should provide information about
an enterprise's financial performance during a period" (FASB Statement of Concepts No. 1, 42);

(e)     The principle that "financial reporting should provide information about
how management of an enterprise has discharged its stewardship responsibility to owners

(stockholders) for the use of enterprise resources entrusted to it" (FASB Statement of Concepts No. 1, 50);

       (f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" (FASB Statement of Concepts No. 2, 58-59);

       (g)    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" (FASB Statement of Concepts No. 2, 79); and

       (h)    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" (FASB Statement of Concepts No. 2, 95).

48.    The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Ener1's securities between January 10, 2011 and August 15, 2011, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ener1's securities were actively traded on the

National Association of Securities Dealers Automated Quotations Market ("NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Ener1 shares were traded publicly during the Class Period on the NASDAQ. As of April 29, 2011, Ener1 had 169,092,179 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Ener1 or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ener1; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

55.     The market for Enerl's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Enerl's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Enerl's securities relying upon the integrity of the market price of the Company's securities and market information relating to Enerl, and have been damaged thereby.

56.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Enerl's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Enerl's business, operations, and prospects as alleged herein.

57.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Enerl's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

58.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

59.     During the Class Period, Plaintiff and the Class purchased Enerl's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

60.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their

receipt of information reflecting the true facts regarding Ener1, his/her control over, and/or receipt and/or modification of Ener1's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ener1, participated in the fraudulent scheme alleged herein.

### FIRST CLAIM

#### Violation of Section 10(b) of
#### The Exchange Act and Rule 10b-5
#### Promulgated Thereunder Against All Defendants

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ener1's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

63.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ener1's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ener1's financial well-being and prospects, as specified herein.

65.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ener1's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ener1 and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

66.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

67.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ener1's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

68.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ener1's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class

acquired Ener1's securities during the Class Period at artificially high prices and were damaged thereby.

69.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ener1 was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ener1 securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

70.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.     The Individual Defendants acted as controlling persons of Ener1 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

75.     As set forth above, Ener1 and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: August 18, 2011

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**

By:_____

Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184

**BRONSTEIN GERWITZ & GROSSMAN LLC**
Peretz Bronstein
60 East 42nd Street
New York, New York 10165
Telephone:    (212) 697-6484
Facsimile:    (212) 697-7296

***Attorneys for Plaintiff Raymond Neufeld***

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.   I, Ray Neufeld, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.   I have reviewed a Complaint against Ener 1, Inc., ("Ener 1"), and authorize a filing of a comparable complaint on my behalf.

3.   I did not purchase my ENER 1 securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.   I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my purchases and sales in ENER 1 securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.   The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed ___8/17/11___ , at ___Santa Ana CA.___
(Date)                         (City, State)

_____
(Signature)

___Raymond Neufeld___
(Type or Print Name)

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|------|------------------------------------|--------------------------|-------------------|
| 1/18/2011 | Purchase | 5000 | $4.40 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |